## SUPERIOR COURT OF BALTIMORE CITY.

Filed December 29, 1911.

JAMES REAMER
VS.
MARY F. GARRETT, ET AL.

*Wm. Colton* for plaintiff.

*D. K. Este Fisher, C. K. Bowie* and *Chas. Morris Howard* for defendants.

GORTER, J.—

The declaration in this case was filed on the 10th of October, 1904, by James Reamer against Mary F. Garrett, Mary E. Garrett, individually, and Alice W. Garrett and Charles Nitze, trustees. It contained but one count, which set forth a lease from the defendants to the plaintiff, of the

premises known as the "Howard House," for the term of 5 years, beginning July 15, 1899, containing a covenant by the defendants, in regard to certain repairs, and then attempts to allege that the defendants have broken their covenant. This covenant is set forth in the declaration as follows:

"Which said agreement of lease contained a covenant by said defendants that all extraordinary necessary repairs to said improvements such as those caused by fire without negligence upon the part of the plaintiff, and the keeping the walls and roof thereof tight, should be made and paid for by the defendants."

The language of the count by which the breach is attempted to be stated is the following: "Under which agreement the plaintiff entered into possession and occupation of said demised premises and abided by and performed all the covenants and conditions stipulated and contained therein on his part to be done and performed, conducting upon said premises and upon others leased or rented by him in connection with the same, a hotel business, which business he had by reason of carefulness and fidelity so well established during an experience of fifteen years upon the same premises that it had become very remunerative, which possession and occupation continued, though more or less embarrassed by the fault and default of the defendants, until the thirty-first day of March, nineteen hundred and four, when he was obliged and compelled to vacate said premises by reason and on account of the defective and dangerous condition of the walls of the improvements upon said premises.

Which condition, without any negligence upon the part of the plaintiff, was the direct result of the failure on the part of the defendants to make necessary repairs thereto, and was known by the defendants in time to have permitted the same to be remedied so as to obviate their defective and dangerous condition, but though promising to repair the said walls, the defendants neglected to repair the same until their condition became such that the plaintiff was ordered and compelled by the Inspector of Buildings of Baltimore City in the exercise of the power and authority granted him by law, to remove from and vacate said premises, by which compulsory vacating the plaintiff was deprived of the occupancy of said premises for the balance of his unexpired term under said lease, etc.

On June 22, 1921, a demurrer was interposed by Mary E. Garrett to this declaration. The demurrer was argued fully by the counsel for the respective parties, and sustained by the court. The reason of the court for sustaining the demurrer was that the plaintiff failed to set forth in his declaration facts that amounted to a breach of the covenant, but on the contrary set forth facts that did not constitute a breach of the covenant.

The court was of the opinion that by the covenant the defendants undertook in case of a fire that might damage the premises, to repair, or in case of a leak in roof or wall, to repair; that is, to make those repairs or as the lease terms them, extraordinary necessary repairs, that might become necessary from an accidental fire, or from the roof or walls leaking, or letting in the weather, but not to again erect or reconstruct the building should it be burnt down or become, by reason of its condition, a subject of condemnation.

In other words, the covenant was intended to provide for those repairs within reason that might come from damage by fire or might be necessary to keep the roof and walls tight, and was not intended to compel the rebuilding of the hotel should it be entirely destroyed by fire or become so dangerous as to be unfit for occupancy.

The lease was not before the court at the time it passed upon this demurrer, but an inspection of it, for it is now made part of the declaration, tends to confirm the correctness of the construction that the court has put upon this covenant; for it provides in its concluding paragraph as follows: And the lessee, for himself, his personal representatives and assigns further covenants and agrees with the lessors and their respective heirs and assigns that on the last day of said term, or other determination of the lease hereby created, he will without any notice to quit from the lessors to the lessee, or from the

lessee to the lessors, peaceably quietly leave, surrender and yield up unto the lessors all and singular said premises in as good plight and condition as the same now are, reasonable wear and tear thereof, and casualties happening by fire and the action of the elements only excepted, it—

Being further understood, however. that in case the improvements hereby demised should, without negligence upon the part of the lessee, his personal representatives or assigns, be wholly destroyed by fire, or to such an extent as to render them wholly unavailable for the uses of a hotel. this lease and the rent hereby reserved shall, upon the payment of all rent in arrear, and the proper proportion of the current rent, come to an end, but should the damage by fire to said improvements be partial only. or of such a nature as to be readily repaired, this effect shall not follow. but the rent pending ·repairs shall be abated in proportion to the extent of the injury done to said premises, used as a hotel.

This clearly shows the nature of the covenant in question as to fire, and giving it equal or the like scope in respect to repairs to roof and walls in order to keep them tight, it would only cover those repairs that could be readily made and not such as would be necessary for the purpose of reconstructing the hotel.

Upon the sustaining of the demurrer the plaintiff was given leave to amend. This he did, and on the 22nd of November, 1911, filed his amended declaration, the same being count No. 2 of his declaration. In other words, he has filed another count. The defendants then prayed oyer of the lease, and a copy of it has been filed in the cause, so that it is now a part of the declaration.

The defendants have again demurred, and this presents the question which is now up for decision, and that is the second count, or amended declaration, and if not, an inspection of the lease supplies it. The main point of objection urged by the defendants is that the breach of the covenants is not sufficiently stated.

This presents a question by no means free from difficulty, because

the counsel for the plaintiff has departed from a statement of the facts as made in the first count of the declaration, and endeavored to assign the breach by negativing the words of the covenant.

We in this case happen to know the facts which are really the basis of this action, viz., that the walls became unsafe and the building was condemned. We know this from the first count of the declaration which so stood from 1904 until 1911, when the demurrer to it was sustained.

Now the pleader attempts to avoid the facts and to write a declaration that by general terms and inferences will cover a case that would give a right of action, and at the same time cover the real case that would not give a right of action. Take the words by which the breach of the covenant is attempted to be set forth in this case:

"That the defendants did not make such extraordinary necessary repairs. so as to keep the walls and roof of the improvements tight."

This might mean that the walls or roof leaked and the defendants did not make the necessary repairs to stop the leaks, which would constitute a good cause of action; or it might mean that the defendants did not build new walls all around the old walls of the hotel, or did not construct new walls in place of the old walls, and thus keep the walls and roof tight, notwithstanding the old walls and roof might have continued tight during the rest of the term without the defendants so doing.

This would certainly have kept the walls tight, for it would have protected them altogether from the elements, or substituted new walls for them. At the same time the defendants would have done what under the covenant they were not called upon to do, viz: build new walls either as a support or as a substitute for the old walls.

Then the plaintiff adds:

"But wholly omitted and refused to do so, so that directly and because of such failure, etc., the premises became untenantable."

This might mean that the defendants did not construct new walls around and as a support for the old

167

or as a substitute therefor, and so the building became untenantable, not because the walls were not tight, or would have become not tight during the term, but because time and exposure and wear and tear and other things had broken them and rendered them dangerous, so that they would have to be taken down. Could not the pleader have in his mind the construction of new walls so as to keep the old ones tight; and could he not consider a construction of new walls within the meaning of the covenant, when it was not; and would not every word that he has written in the declaration as to the breach or consonant with his view as to the scope of the covenant, and yet without its sphere according to its true import? It seems so, and if so is not the pleading bad? For good pleading should set forth facts that constitute a good cause of action, and not contain sentences or words, open to two constructions, one of which would make a good cause of action and the other not.

The first section of Article 75 of the Code says: "Whatever facts are necessary to constitute the ground of action, defence, or reply, as the case may be, shall be stated in the pleading and nothing more; and facts only shall be stated and not arguments or inferences, or matters of law or of evidence, or of which the court takes judicial notice."

Has the plaintiff in this declaration in stating what he intends as breach of the covenant done this? Should not the declaration state that the improvement upon the premises became out of repair so that the walls and roof were not tight and that the defendants failed after notice to make such repairs as were necessary to make them tight?

When the plaintiff in his declaration only states "that the defendants did not make and pay for such extraordinary necessary repairs, so as to keep the walls and roof of the improvements on said premises tight during the term," is not there only an inference that the walls and roof were not tight? Is the next clause any more than an interference "but wholly omitted and refused to do so?"

Does the effect as stated in the declaration, that as a result the prem-

ises became untenantable, help the situation? What right of action could the plaintiff have under the covenant if in point of fact the roof or the walls during the term never were in a condition that they were not tight?

What imaginable right of action could the plaintiff have under the covenant if during the term neither the roof nor the walls at any time were in a condition to let in the rain or snow or wind or weather? Yet the averment that they were not tight is not directly made in the declaration, but can only be found there by inference.

Take the form we find in the Code, Article 75, Section 22: "That the plaintiff by deed let to the defendant a house. * * * and by the said deed covenanted with the plaintiff well and substantially to repair the said house during the said term (according to the covenant), yet the said house was during the said term, out of good and substantial repair."

The breach here in the form is that the house was out of good and substantial repair, not as in the declaration under consideration, that the defendant did not well and substantially repair the said house during the said term. There might have been no occasion for his doing so for the house might not have been out of repair.

When we turn to Mr. Poe's valuable work on Pleading, Section 569, it says the general rule is that a breach of a covenant may be assigned in the negative of the covenant. A covenant of seizin and the right to convey are placed within this rule. But not to be seized or not to have the right to convey would be breaches of these covenants.

In covenant against incumbrances the rule is otherwise, because the breach of the covenant consist only in the existence of certain incumbrances, and not others; so also in a covenant for quiet enjoyment, the nature of the interruption of the plaintiff's possession should be shown, for every interruption would not be a breach.

The covenant in this case is to make such extraordinary necessary repairs as will keep the roof and walls tight. This imposes no obligation upon the defendants for which the plaintiff

would have a right of action, unless by reason of the failure of the defendants to keep the roof and walls tight, the roof or walls ceased to be tight. The plaintiff under this covenant has no right of action unless the roof or the walls during the term ceased to be tight, so that by reason of this condition the plaintiff's use or enjoyment of the property was affected, and this fact should be directly averred in the declaration. Crisfield vs. Storr, 36 Md., 130. It is unnecessary to pass upon the other points, although I am of the opinion that notice to the defendants should be directly stated as having been given and not left to inference by use of the word "refused".

—I will sustain the demurrer.